UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

QUENTIN LAMONT GILLESPIE,

        Petitioner,

        v.                                                 Case No. 23-C-921

JON NOBLE,

        Respondent.

_____

**DECISION AND ORDER DENYING HABEAS PETITION**
_____

Petitioner Quentin Lamont Gillespie, who is currently incarcerated at Kettle Moraine Correctional Institution, filed a petition for federal relief from his state court conviction pursuant to 28 U.S.C. § 2254 on July 11, 2023. Petitioner was convicted in Milwaukee County Circuit Court of one count of second-degree sexual assault of a child and was sentenced to nine years and six months of initial confinement and seven years of extended supervision.

On July 12, 2023, the court screened the petition pursuant to Rule 4 of the Rules Governing § 2254 Cases and allowed Petitioner to proceed on his claims that (1) there was insufficient evidence presented at trial to sustain a conviction; (2) the prosecutor engaged in misconduct during closing argument by referring to Petitioner's prior criminal convictions; (3) the court did not allow Petitioner to present his defense that the victim made false allegations of sexual assault in the past; (4) trial counsel was ineffective in failing to present evidence that the victim falsely accused another individual of sexual assault; (5) trial counsel was ineffective in failing to challenge the victim's description of Petitioner in police reports; (6) the jury instructions were flawed and deprived Petitioner of his right to due process; and (7) trial counsel was ineffective in failing to

object to the flawed jury instructions. The court ordered Respondent to either file an appropriate motion seeking dismissal or answer the petition and Petitioner to file a reply within 30 days following the filing of Respondent's answer. Respondent filed an answer on August 16, 2023, and Petitioner filed a reply on October 27, 2023. The court finds that no further briefing is required and will resolve the petition on the record as it now stands. For the following reasons, the petition will be denied and the case will be dismissed.

## BACKGROUND

On August 17, 2017, the State charged Petitioner with second-degree sexual assault of, D.J.L., a child younger than sixteen years of age. The criminal complaint alleged that, on or around June 27, 2017, while Petitioner and D.J.L. were guests in Lashanda Hall's home, Petitioner touched D.J.L.'s breasts and penetrated her vagina with his fingers. Petitioner pled not guilty, and the matter proceeded to trial.

At the trial, Hall testified that, in late June 2017, D.J.L. babysat for her during the day then spent the night at Hall's home in Milwaukee. At approximately 1:00 a.m., Petitioner, who was Hall's friend, knocked on the door, and Hall allowed him to come in because she could tell he was intoxicated and needed a place to rest. Hall told Petitioner to sleep on the couch where D.J.L. was watching television. Hall stated that, when D.J.L. was ready to go to sleep, she should go to Hall's bedroom. Hall testified that she woke up several times during the night and saw both Petitioner and D.J.L. on the couch. Petitioner left Hall's home around 5:00 a.m. that morning.

D.J.L. identified Petitioner in the courtroom as the man who assaulted her. She testified that she was born in July 2002 and was a high school freshman. She stated that, at the end of June 2017, when she was fourteen years old, she spent the night at Hall's home. While she was watching television on the couch, Petitioner, a man she did not know, knocked on the door and

2

Case 1:23-cv-00921-WCG   Filed 12/13/23   Page 2 of 9   Document 11

Hall permitted him to spend the night. Petitioner sat on the couch near D.J.L. He appeared to fall asleep but then stated he "liked to touch." D.J.L. testified that he put his hand in D.J.L.'s pants and inserted his finger in her vagina but denied that he touched her anywhere else. D.J.L. stated that, during the assault, Petitioner asked her age and she said she was fourteen years old but "he just kept going." When she started to cry, Petitioner asked her age again then said that, had he known her age, he wouldn't have done that and that he was sorry. Eventually, he fell asleep. D.J.L. stated that she did not immediately tell Hall what had happened and did not report the assault to her mother. In August 2017, D.J.L. went to summer camp and told a camp counselor about the assault. Petitioner questioned D.J.L. about the timing of her disclosure on cross-examination and suggested that she alleged a sexual assault because she did not want to stay at camp and she wanted attention from her mother.

D.J.L.'s mother testified that a camp counselor told her that D.J.L. had reported a sexual assault and that she called the police in response. She confirmed that D.J.L. had not previously said that anyone touched her inappropriately at Hall's home.

Camp counselor Yadda Lang testified that, in August 2017, D.J.L. approached her in private and disclosed that a man D.J.L. did not know had touched her vagina while she was a guest at a third-party's home. On cross examination, Lang acknowledged that D.J.L. also alleged that the man touched her breast.

Milwaukee Police Officer Joshua Tryan testified that he interviewed D.J.L. in August 2017, shortly after she reported a sexual assault. The interview was recorded by his body camera. The jury watched the portion of the video where D.J.L. described the assault and stated that it involved sexual touching of both her vaginal area and her breast. Officer Joan Mueller testified that she showed D.J.L. a photo array from which D.J.L. identified Petitioner as her assailant.

3

After the State rested, Petitioner advised the court that he intended to testify. The court granted the State's motion to bar Petitioner from repeating a statement he made to police about the victim making similar allegations about her brother sexually assaulting her. It explained that no one could testify about any other assault that D.J.L. might have alleged unless the court first held a hearing to determine the evidence's admissibility. Defense counsel advised that he did not intend to present such evidence, as testimony about a prior assault risked arousing the jury's sympathy for the victim. Petitioner also responded that he wasn't going to bring it up anyway.

Petitioner took the stand and admitted two prior criminal convictions. He testified that, late on a night in June 2017, he went to Hall's home after drinking beer at a nearby tavern. Hall told him that he could sleep on the couch, and he fell asleep there. Petitioner did not recall anyone else being on the couch when he fell asleep and he denied touching anyone during the night. He admitted that someone was on the couch when he woke up. On cross-examination, Petitioner denied that he was intoxicated when he arrived at Hall's home and denied seeing D.J.L. that night.

A jury found Petitioner guilty of second-degree sexual assault of a child younger than sixteen years old. He was sentenced to nine years and six months of initial confinement and seven years of extended supervision. Petitioner, through counsel, filed an appeal under the no-merit procedure set forth in Wis. Stat. § 809.32. The appeal was subsequently voluntarily dismissed so that Petitioner could pursue a claim for additional sentence credit. The circuit court granted Petitioner's motion for sentence credit.

Petitioner again appealed. Appellate counsel filed a no-merit report in the Wisconsin Court of Appeals pursuant to *Anders v. California*, 386 U.S. 738 (1967), and Wis. Stat. § 809.32. Petitioner filed multiple responses, and counsel filed three supplemental no-merit reports. The court of appeals considered the no-merit reports and Petitioner's responses, independently

reviewed the record, concluded that no arguably meritorious issues existed for appeal, and affirmed Petitioner's conviction on November 23, 2021.

Petitioner filed a petition for review in the Wisconsin Supreme Court on January 26, 2022. The Wisconsin Supreme Court denied the petition for review on April 13, 2022. Petitioner then filed the instant federal habeas petition on July 11, 2023.

## ANALYSIS

This petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254. Under AEDPA, a federal court may grant habeas relief only when a state court's decision on the merits was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by" decisions from the Supreme Court, or was "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d); *see also Woods v. Donald*, 575 U.S. 312, 315–16 (2015). A state court decision is "contrary to . . . clearly established Federal law" if the court did not apply the proper legal rule, or, in applying the proper legal rule, reached the opposite result as the Supreme Court on "materially indistinguishable" facts. *Brown v. Payton*, 544 U.S. 133, 141 (2005). A state court decision is an "unreasonable application of . . . clearly established Federal law" when the court applied Supreme Court precedent in "an objectively unreasonable manner." *Id.* That is, and was meant to be, an "intentionally" difficult standard to meet. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

In order to prevail in this case, Petitioner must show that the Wisconsin Court of Appeals affirmed his conviction in a manner contrary to *Anders v. California*, 386 U.S. 738 (1967). *Anders* permits appellate counsel to file a no-merit brief and withdraw as counsel, "provided that certain safeguards are observed: (1) counsel must first conduct a 'conscientious examination' of the case, (2) any motion by counsel to withdraw must be based on an opinion that the appeal is frivolous and be accompanied by a brief referring to anything in the record that might arguably support the appeal, (3) the defendant must be furnished a copy of the brief and allowed to raise any points that he chooses, and (4) the appellate court then must itself conduct a thorough examination and decide whether the appeal is wholly frivolous." *Walker v. McCaughtry*, 72 F. Supp. 2d 1025, 1032 (E.D. Wis. 1999) (citing *Anders*, 386 U.S. at 744; *Penson v. Ohio*, 488 U.S. 75, 80 (1988)). The Wisconsin Court of Appeals followed the *Anders* procedure in determining that no arguably meritorious issues existed for appeal and affirmed Petitioner's conviction. Dkt. No. 7-10.

This court has carefully reviewed the decision of the Wisconsin Court of Appeals. After considering each issue cited by Petitioner, Petitioner has alleged no facts suggesting that the court erred in its conclusion that the evidence was sufficient to support the conviction. Contrary to Petitioner's claim that there were no witnesses, the victim testified in detail about the offense and other witnesses provided indirect corroboration, as is often the case in child sexual assaults.

Petitioner also asserts that the prosecutor engaged in misconduct during closing argument by referring to Petitioner's prior criminal convictions. "Where a defendant asserts that the prosecutor's closing argument was improper, we analyze the conduct under the framework of prosecutorial misconduct." *United States v. Rebolledo-Delgadillo*, 820 F.3d 870, 878 (7th Cir. 2016) (citation omitted). First the court determines whether the alleged misconduct was in fact improper and, if it was, the court next considers whether the misconduct prejudiced the petitioner.

6

*Id.* During closing argument, the prosecutor argued that the jury could consider Petitioner's prior convictions in assessing his credibility. As the Wisconsin Court of Appeals explained, this argument was consistent with Wisconsin Jury Instruction—Criminal 327 and Wis. Stat. § 906.09(1). The court correctly concluded that the prosecutor's remarks did not amount to prosecutorial misconduct.

In addition, Petitioner asserts that the jury instructions were flawed and deprived him of his right to due process because the court defined sexual intercourse with different meanings, which confused the jury. He also claims that his attorney's failure to object to the instructions constitutes ineffective assistance of counsel. The court's alleged failure to properly instruct the jury is not a claim appropriate for federal habeas relief. "[I]nstructions that only contain errors of state law may not form the basis for federal habeas relief." *Burris v. Smith*, 819 F.3d 1037, 1042 (7th Cir. 2016) (cleaned up); *see also King v. Pfister*, 834 F.3d 808, 814 (7th Cir. 2016) ("[A] claim that a state court misunderstood the substantive requirements of state law does not present a claim under § 2254." (cleaned up). Because the jury instructions were not constitutionally defective, Petitioner's attorney's failure to object to them cannot form a basis for federal habeas relief.

Petitioner also asserts claims of ineffective assistance of counsel. A petitioner who claims that counsel was ineffective must show that (1) counsel's representation was deficient in that it fell below an objective standard of reasonableness and (2) counsel's deficient performance deprived the petitioner of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). Petitioner claims that trial counsel was ineffective by failing to challenge the victim's description of Petitioner in police reports as "6'0", 6'2" and 'cockeyed.'". He states that he is "5'10" and straight-eyed." The court of appeals explained that identification was not an issue in this case. Hall

testified that Petitioner was the person who slept on her couch on the night D.J.L. claimed she was assaulted there, D.J.L. identified Petitioner in court as her assailant, and Petitioner admitted that he slept on Hall's couch. The court of appeals reasonably concluded that Petitioner was not prejudiced by the alleged deficiency.

Petitioner claims that the trial court violated his rights to present a defense. The Sixth Amendment guarantees a criminal defendant the right to present a defense. *See Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). "At a minimum, criminal defendants have the right to put before a jury evidence that might influence the determination of guilt." *Horton v. Litscher*, 427 F.3d 498, 504 (7th Cir. 2005) (cleaned up). Petitioner asserts that the trial court prevented him from mentioning in front of the jury that the victim had previously made false allegations of sexual assault against someone else. But the court did not bar this testimony altogether. Instead, the court made an initial ruling that no one could testify about any other assault that D.J.L. may have alleged unless the court first held a hearing to determine the admissibility of the specific evidence intended to be introduced. *See* Dkt. No. 7-19 at 73:16–74:12. Trial counsel then indicated that he did not intend to present any such evidence because testimony about a prior assault not related to the instant allegations risked arousing the jury's sympathy for the victim. *Id.* at 74:24–75:6. Petitioner also indicated on the record that he "wasn't going to bring it up anyway." *Id.* at 75:14. The court of appeals concluded that defense counsel's approach was a reasonable strategic decision.

He also claims that trial counsel was ineffective by failing to present evidence that, approximately a year before the incident in this case, the victim falsely accused Hall's son of sexual assault. The court of appeals stated that appellate counsel noted in his no-merit report that he retained an investigator to explore the matter but was unable to substantiate Petitioner's claim. Hall told the investigator that the victim never made any accusations against her son, and the

8

victim's mother told the investigator that the victim had not previously reported a sexual assault. Appellate counsel also contacted the district attorney, who had no information about a prior false report involving the victim. Because nothing presented to the court supported a claim that the victim made a prior false report of sexual assault, the Wisconsin Court of Appeals found that no arguably meritorious basis existed to fault trial counsel for failing to present such evidence. In short, no federal constitutional right was violated by the court's ruling or counsel's performance.

The state courts' conclusions were reasonable and do not come close to reaching the federal AEDPA standard for habeas relief. Therefore, the petition must be denied.

## CONCLUSION

For these reasons, Petitioner is not entitled to federal habeas relief on his claims. His petition for writ of habeas corpus is therefore **DENIED**, and the clerk is directed to enter judgment dismissing the case. A certificate of appealability is **DENIED**. I do not believe that reasonable jurists would find that Petitioner has made a substantial showing of the denial of a constitutional right.

Petitioner is advised that the judgment entered by the clerk is final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. *See* Fed. R. App. P. 3, 4.

**SO ORDERED** at Green Bay, Wisconsin this 13th day of December, 2023.

s/ William C. Griesbach
William C. Griesbach
United States District Judge